The opinion of the Court was delivered by
GrLOVER, J.
As a question of constitutional law arises in this case, it has been referred for determination to this Court.
In .answer to a rule served upon the respondent, as tax collector of Edgefield. District, to show cause why a writ of mandamus should not issue, compelling him to receive the bills of the President and Directors of the Bank of the State of South Carolina in payment of the taxes due to the State by the relator, he made a return, justifying his refusal on the ground, that the fifth section of an Act passed De *153 cember, 1866, (13 Stat. 395,) “to raise supplies for tbe year commencing in October, 1866,” directs that “the taxes herein levied shall be paid only in gold and silver coin, United States treasury notes or notes of national banks, or the bills receivable of this State, and also pay certificates of jurors and constables for attendance on the Courts.” Hearing this return, the Circuit Judge who granted the rule ordered the same to be discharged.
From this order the relator appeals on the following grounds:
1. That, under the sixteenth section of the Act of the Legislature, incorporating the President and Directors of the Bank of the State of South Carolina, the bills of said bank are receivable by ail tax collectors in all payments for taxes due the State.
2. That the Act of the Legislature of the State, ratified December 21, 1866, impairs the obligation of the contract made between the State and the bill holders, in violation of the Constitution of the State and of the United States.
If the decision of the points raised by the grounds of appeal depended on the construction of the fifth section of the Act of 1866 only, or on the several Acts to raise supplies, the answer of the respondent would be conclusive. The public expenses of each year are a charge against the annual income; and as the Act of 1866 and all Acts to raise supplies are annual, and their operation expires with the year, the tax payer and collector are equally bound by their provisions. But the relator relies on the sixteenth section of an Act passed in 1812 (8 Stat. 24) “ to establish a bank on behalf and for the benefit of the State.” This bank was established, as is recited in the preamble, “ on the funds *154 .of the State,” and by the terms of the Act the faith of the State is pledged for its support. The sixteenth section provides “that the bills or notes of said corporation, originally made payable, or which shall have become payable on demand, in gold or silver coin, shall be receivable at the treasury of this State, either at Charleston or Columbia, and by all tax collectors and other public officers, in all payments of taxes or other moneys due the State.” The intention of, the Legislature was to increase and secure ■public confidence in, and to give credit to the bills of the bank, and thereby extend their circulation. The bills were received, and currency was given to them under this guarantee of the State, that in payment of taxes, &c., they should be received at the treasury. The relator applies for a mandamus, on the ground that by a refusal to receive the bills the State has impaired the obligation which bound her to perform her contract. Conceding that the sixteenth section of the Act of 1812 creates a valid contract between the State and the bill holders, we must examine the terms employed and the conditions stipulated, to ascertain the .nature of the contract, and the obligation imposed by it. The undertaking of the State was not, in the language of the first ground of appeal, to receive the bills of the bank in all payments for taxes, &c., but such as are “ originally made payable, or which shall have become payable on demand, in gold or silver coin,” &c. These words were first .used in 1802, in an Act to charter the State Bank, (8 Stat. ■ 18;) and afterwards in 3810 and 1811, the same language is employed in the charters of the Union and Mechanics’ Banks, (8 Stat. 17 and 23,) and in several other bank charters subsequently granted/ and in Acts to raise supplies annually passed.
The construction of the words “ originally made payable, or which shall have become payable, on demand,” is aided by the additional words “ in gold or silver coin.” If the *155 purpose of tbe Legislature was merely to indicate the form of tbe bills, without regard to their availability in the payment of the public creditors, there was no necessity to add that they should be payable “ in gold or silver coin.” The intention could not have been to receive the bills, not only of the Bank of the State, but of private banks, without reference to their convertibility. These words were inserted to guard against the receipt of worthless paper; and it is not denied that those tendered by the relator are of no appreciable value, and constituted no part of the currency of the country. An authority to receive bank bills in payment of the taxes, regardless of their value as currency, might, in times of great pecuniary embarrassment, deprive the State of the means necessary to carry on the Government. We apprehend that a fair construction of the sixteenth section of the Act which constitutes the contract between the State and the bill holders requires that the latter must tender in payment of his taxes only such bills as are payable, or shall become payable in gold or silver coin, on demand, and not such as possess neither a specie basis nor public confidence to impart value or give them currency ; and before the relator complains of the breach of the contract bj the State, he must show a performance by himself.
The decision in the case of Woodruff vs. Trapnall, (10 How. 190,) referred to by the counsel for appellant, depended on the construction of the twenty-eighth section of an Act of the Legislature of Arkansas to incorporate the Bank of the State of Arkansas, which provided “ that the bills and notes of said institution shall be receivable in all payments of debts due to the State of Arkansas.” This language differs widely from that used in the sixteenth section of the Act to establish a bank on behalf and for the benefit of the State. No restriction or limitation is imposed on the authority conferred to receive the bills; no *156 provision is made guarding against the depreciation of them, or the insolvency of the bank. A tender by (the public debtor of bills of the Bank of Arkansas, without regard to their convertibility or currency, was a compliance with the express terms of the contract, and a refusal by the State to receive them, impaired the obligation binding her to the performance of it.
Admitting the authority of the case of Woodruff vs. Trapnall, and of other cases, affirming the same doct2’ine, it cannot control the decision of the principal case which presents for adjudication the construction of a different contract. But if there be error in our construction of the contract, and that the true intent was to authorize tax-collectors to receive the bills of the bank, whether they. possessed any value as currency or not, the relator is not entitled to a mandamus according to his own construction. The Act of 1843, (11 Stat. 246,) directing that all taxes for the use and service of the State, shall be paid in specie, paper medium, or the notes of the specie-paying banks of the State, was a virtual repeal of the sixteenth section of the Act of 1812. And although the Act of 1843 may be within the constitutional inhibition prohibiting a State from impairing the obligation of a contract, the prohibition can apply only to bills in circulation before the passage of the Act, to which time the guarantee of the State extended. If, therefore, a tender is made of bills issued and in circulation after 1843, it would not be a compliance with the conditions prescribed, to pay in “ specie, paper medium, or the notes of the specie-paying banks of the State.” This point was made in Woodruff vs. Trapnall; and the Od'urt held, that “ the notes issued by the bank after the repeal were not within the contract, and might be refused by .(the State.”
After due consideration of the points made, we are of *157 opinion that the order, discharging the rale for a mandamus, was correct; and the motion is discharged.
DuNKIn, 0. J., Wardlaw, A. J., Mukro, J., Carroll, C., INGLIS, A. J, Moses, J., Dawkins, J., and LesesNE, 0,, concurred.

Motion dismissed